May it please the court. My name is Matthew Bishop. I represent the Appellant's Center for Biodiversity and the Central Arizona Paddlers Club. In this matter, if I may, I'd like to reserve five minutes for rebuttal. All right. Try to keep track of the time. Do you see the time on there? Thank you. I'd like to start by saying that this case is about the Forest Service's decision to ignore and abandon its own findings in this comprehensive 375-page report. The report is an inventory of potential wild and scenic rivers on national forest land in Arizona. It includes detailed information and maps on 57 potential wild and scenic rivers. These are rivers that qualify for inclusion in the national system because they are both free-flowing and possess at least one outstanding remarkable value. Are you pursuing both that there was final agency action and two, that the Forest Service withheld unreasonably final agency action? Your Honor, in this case, I'm arguing that the final agency action is the Forest Service's failure to act, which is based on the Congress's clear statutory mandate in Section 5G1 of the Wild and Scenic Rivers Act, which says they shall take potential rivers into account while planning. But your case is a failure to act case, failure to take unreasonably delay in taking mandatory action. That's correct, Your Honor. And what's the mandatory action they're required to take by law? In this case, Your Honor, they're required, Congress directed them to take potential rivers into account while planning. 5G1 says that in all planning for the use and development of water and related land resources, the Forest Service shall give consideration to potential wild and scenic rivers. The problem, it does say that for rivers that have been designated as potential additions to the wild and scenic rivers system. In this case, though, aren't we one step removed from that? Because we have this report, and the eligibility is clearly established for those rivers. But doesn't Congress need to actually act to designate those rivers before they come within Section, was it, 1276? Yeah, it's actually 1276D1. Yeah. Your Honor, the way the system works under the Wild and Scenic Rivers Act, it's really a three-step process. The first stage is the eligibility findings, which is what this report is all about. And that's purely a factual determination. Is it free flowing? Because that's one outstanding value. Wait. Eligibility. Well, there are two ways of designation, right? One is by the agency and one is by Congress. Right. Is that right? That's right. Now, this eligibility determination applies only, doesn't it, to the agency designation? No, Your Honor. It actually applies to both, but particularly to this particular process, which would, in order to actually be designated, it would take an act of Congress for these rivers to actually be designated. Now, why is that as opposed to straight agency action? Well, straight agency action under Section 5A2 of the Act, states can recommend to the National Forests or the BL or the Park Service to actually recommend it. Do they still need the congressional action? Well, those rivers are treated a little bit differently than these rivers would be treated, in the sense that these rivers would need to be deemed eligible. And then they would do something called a suitability analysis, which is Part 2. Have they done the suitability analysis? They have not. And that's really what this case is about. We're arguing that until the suitability analysis is done and until Congress can make a decision on these particular rivers, we would like the Forest Service to at least take them into consideration and protect them until that's actually happened. That would be nice, given that it's been, what, ten years since they found them eligible. But given that they have not been designated, I don't see how the claim that they have unlawfully followed their mandatory duty to take into consideration these rivers in various aspects of planning has come to fruition. Because if the rivers haven't been designated by Congress, which seems they didn't do suitability, and then there's one other classification, they also have to classify them. And if that hasn't been done sufficiently that Congress hasn't been able to put them in the 1276 category, what duty does the Forest Service have at this point? Your Honor, the 1276 category applies to potential additions. Right. And a potential addition is the same thing as an eligible river. Does it require suitability and classification? No. It's just the first step. And I think the duty that Congress required in 5D1 applies to potential additions, and which would apply to these particular rivers. Congress wanted to make sure that these rivers were taken into consideration, protected, until they would have a decision to make a final decision on designation. The process takes a while. So once the Forest Service has prepared the support, deemed these rivers eligible, they are immediately within the 5D1 classification? Right. As soon as they're determined to be both free-flowing and possess at least one outstanding market value, they're determined to be potential additions or eligible rivers. Actually, by way of example, in New Mexico. The Supreme Court only said they were potentially eligible. Right? They contend, and they argue in this case, that this is not an eligibility determination. But I would submit to this Court that there was absolutely no authority for that position. And, in fact, if you look at the Wildlife and Rivers Act. Why do you say that? Well, the Act itself says that if a river is deemed to be free-flowing and possessing at least one outstanding market value, it is per se eligible. Where does it say that? Which section? It says that, I believe, in Section 1272. But this report could be something, you know, just outside of the requirements of the Act in the sense that it was made at the request of the Arizona congressional delegation, right? In other words, maybe the delegation wanted to make their own designation, so they asked for a report. So it could be a report that has nothing to do with services, statutory duties. It could just be a report to Congress. Right? It's not under the Act. Isn't that one possible interpretation of that report? Your Honor, actually, the report itself is required by the Act. It's actually the second sentence of 5G1 requires them to actually go out in inventory for those. Why is it required? Excuse me? Why do you say this? Some report and some is required by the Act. But why do you say this is the one that's required by the Act? Because this was done at the request of Congress or a group of Congress members. That's correct, Your Honor. And they wanted to know whether or not the BLM and the Forest Service in Arizona had completed their inventories. And when they determined that they hadn't, they requested that they do so. And that was back in 1993. No, but the reason they did it was, you know, maybe the Arizona delegation was thinking of introducing legislation to make the designation themselves. Isn't that a possibility? Well, the report is a requirement of the statute. Why do you say that? Well, the statute doesn't say, you know, the service is required to make a report to the Arizona delegation whenever they request, does it? That's correct. Well, then it's not required by statute, is it? But the statute does say that the agency shall make specific findings and investigations to determine eligibility. And maybe it hasn't done that yet, right? Well, that's what it's arguing here in this case. Right. And I would submit that they have done that. Well, how do we know whether that is actually an eligibility report or not? Because, Your Honor, if you look at the report itself, it classifies, it actually has a section on eligibility for each of the rivers. Right. And it identifies it as having at least one outstanding remarkable value. And it even gives each river a classification, wild, scenic, or recreational. In fact, this is an extremely comprehensive report. It is. And it's interesting because I don't know, and this question I will have for the Forest Service, what more would be needed to be included in this report to make it an eligibility report? Is it just the label calling it an eligibility report or treating it as an eligibility report, which they seem to be refusing to do so? Because it is quite comprehensive. You know, this is the first eligibility report I've seen, so I'm not sure what more would be required. Well, Region 3 of the Forest Service includes New Mexico and Arizona. In New Mexico, the eligibility findings are just a survey sheet where they check off whether or not it's been free-flowing and possessing one outstanding remarkable value. This really takes it to another level. So your answer to Judge Warren's last question is nothing more is required, right? This is about as comprehensive of a report I've ever seen in terms of compatibility eligibility findings. That's correct, Your Honor. So having documented these, I mean, having documented 57 potential additions, I think one interesting point I would like to make is that the report also lists 180 rivers that they found ineligible. So for them to say that it's not an eligibility finding, I think it's contradicted by the list of ineligible rivers that they didn't include. Well, those 180 don't run, don't have water in them most of the time. So why would they, would there be an issue about that? Your Honor, I was just making the point that this is an eligibility finding because they did find 57 that did qualify. Potentially. Potentially. That's correct. But what creates the duty to declare any of these as wild and senior group? Congress hasn't. Congress, all Congress said, Your Honor, was that in Section 5d1, that these rivers shall be taken into consideration while planning if they're deemed eligible. By whom? Deemed by? By the Forest Service. And in this particular case, the Forest Service, as they concede, they plan at two levels, at the forest plan level and at the site-specific level. And our concern in this particular case is that there are a lot of authorized activities in these 57 rivers that will prejudice their chances of eventually being designated by Congress. The agency's complacency in doing the suitability studies, the next step, which are generally accompanied by an EIS. The suitability study required, first of all, isn't it correct that either, either the service can make the designation, whatever agency has jurisdiction over that area, either the service or Congress itself can make the designation? The service cannot make the designation for these rivers. It would actually have to be Congress's decision. So what does the service do? Make a recommendation to Congress? Right. They go out and basically inventory their own lands, find eligible rivers, and then they do a suitability analysis, which is like a political determination to see whether or not they really want to designate these rivers given current management. So if they do the suitability analysis and it comes out in favor of the designation, then what? Then it would take an act of Congress. Then it goes to Congress. Right. In fact, you know, at the same time the Forest Service did this particular study, the BLM did the same thing. In fact, the BLM went ahead and took the next step, did the suitability analysis, and I think they ended up with 13 rivers they recommended in Arizona to be designated under the Wild and Sink Rivers Act, and they're still waiting for that. Part of your position is that when this report says that these are, I think they say they're potentially eligible, it means the same thing as eligible, right? Yes, that's correct, Your Honor. In fact, I think they're just a redundancy to say potentially eligible. That's correct, Your Honor. I don't believe there's any such thing as a potentially eligible river. There is a potential addition, which is the same thing as the eligible river, both meeting the free-flowing and having at least one outstanding amount of value characteristics. But there's really no such thing as a potentially eligible river. And I think that's backed up by the interagency guidelines, the Forest Service handbook, and the Act itself, which says it's per se eligible. Because to classify a river as eligible means it has the potential for inclusion. That's right. And then the next step, it gets a bit confusing, but the next step would be the suitability. The first eligibility is purely a factual inquiry, and the next step is a political inquiry, and then there's the designation step. Well, the district court ruled on the 12th, Rule 12 motion, that this wasn't right, or it wasn't. There was no final agency action. That's correct, Your Honor. If it is the final agency action that's right, what do we do? In this particular case, we maintain the final agency action is the agency's failure to take these rivers into account while planning as specifically. What's this exhibit? Is that a final agency action? No. We're not challenging the report. Because they identified the eligible rivers, then the duty triggers in 5G1 to take them into account. What did they fail to do that they were legally required to do? They failed to take these rivers into account while authorizing activities in these 57 river areas. You know they failed. What were they doing when they wrote this report? Were they taking anything into account there? Well, when they're writing this report, they hadn't identified the 57 rivers, so there was no duty. They have a whole list of the rivers. They have what, if they have a dam in them or if there's a pond behind the dam. They have all that information. Now, what are they failing to take into consideration? Well, they're failing to take into consideration, and there are specific examples that we have that we haven't been given an opportunity to present evidence in this case yet. But we're aware of a number of activities, for instance, where we have increased livestock grazing, new fences or water tanks in a number of these 57 river areas, or increased expanding trails and roads to allow more motorized vehicle access to these areas. And the concern is that, for instance, on Sycamore Creek or the West Fork of the Black River, that these are wild rivers because of outstanding riparian habitat and native trout habitat. And we're concerned that in authorizing activities, the Forest Service has basically just abandoned its own findings and is not ensuring that these rivers are protected, you know, pending the study period. Does it have a mandatory duty to go forward to do the suitability analysis and make recommendations to Congress? I'm not – there isn't – it's sort of – the process for designation is outlined in the statute itself. Off the top of my head, I'm not aware if there's a sort of mandatory shell language for the suitability step, but it is the process that's outlined in their interagency guidelines. So would I – as I understand your argument, that's not really relevant to the decision in front of us, because given that they've made these eligibility findings, that is tantamount to deeming these records – rivers potential additions, and therefore they're violating the duty in another part of the Act, which is mandatory, to consider these rivers, all of them, and maybe once they're designated, there will be fewer of them, but to consider them with all their building plans and everything else, other agency action that's taking place. That's correct, Your Honor. Okay. There's a lot of activity happening. I think that, you know, this Court's recent decision in the Montana Wilderness Act Association, the U.S. Forest Service case, is really analogous to this case because in that case you had the plaintiffs trying – it was sort of confusing. But the duty there was much more, I would say, precise, wasn't it? Well, the duty in that particular case was to maintain wilderness. To maintain. It was more like a substantive goal. Now, as far as I can gather in this case, the only duty that you're contending is mandatory is the duty to consider, right? To consider while planning. That's what the statute says. What does it mean to consider? I mean, if the agency says, well, yeah, we considered it. Well, it's not in your report. Well, I know, but we considered it. How can you test that? How can a court review that? Whether it was considered. Well, in this particular case, notably, if the Forest Service was taking these rivers into account while planning, say like as they're doing in New Mexico. Is that what you're saying? Consider means take into account while planning. Take into account, which would be to ensure that the outstanding remarkable values identified in here are at least protected until Congress can make a decision on what to do with them. And put it down in the report that we took into account A, B, and C. Well, they would. For instance, in New Mexico, what they've done is they actually amended a lot of forest plants, a temporary amendment to protect these river boundaries until a decision is made. So if they approve a site-specific project, if they allow grazing or fencing. If everybody agrees, that's certainly one way to consider something. But is that the only way? Well, I think it's, I think Congress made sure that they can't ignore these rivers while they're planning. No, my question, what does it mean when Congress gives somebody the duty to consider something? Well, in the context of the National Environmental Policy Act, I think it means they need to consider the impacts of the project before they can move ahead. And I think in this particular case that a similar analysis would apply. I mean, it is fairly general in the Environmental Safety and Rivers Act. But the agency's own Forest Service handbook spells out what the consideration process is. And in that particular handbook, they say. What does the handbook say about the duty to consider? It says that all eligible rivers deemed eligible shall be taken into account while planning, and interim protections for these rivers shall be applied pending a suitability determination on these rivers. So it actually lays out a very specific process. After the eligibility determination is made. Right. Which is what we contend is reported. That amounts to. Yeah. All right. You're going to stay there, right? I better stay the rest of my time. One more. This case is before us on 12B-6. Has there been a finding as to whether that is an eligibility report or not? A factual finding? Your Honor, there actually has not been a determination at the district court level. They didn't get to that precise issue. They did. He did address it briefly in a footnote, but he didn't base his decision on whether or not this is, in fact, an eligibility finding. Okay. Thank you. Thank you. All right. We'll give you two minutes for rebuttal, all right? Okay. Thank you, Your Honor. May it please the Court. My name is Anna Katzelos of the Department of Justice, and I represent the United States Forest Service. I would like to address first the failure to act claims brought by the Center for Biological Diversity, and if I have time, I would also like to address ripeness today. The Center alleges that the Forest Service violated Section 5D1 in this case, and pertinently, the relief requested includes an order compelling the Forest Service to amend its forest plans now to include protective measures for these river segments, and enjoining the agency from approving a wide range of new projects, including timber, water resources, mineral development, and grazing, until those measures are fully implemented. This action is not required by the statute, and that is the question before the Court today. This action is what action? The action that the Center requests of the Forest Service, the amendment of the forest plan. Which is to take into account. They are asking for the institution of protective measures, and I think that that was just made clear by Mr. Bishop. They contend that the duty in the statute requires the Forest Service to protect these river areas until a time of suitability is made. The statute does not require this action. This case is. Wait a minute. Are you saying he said that, or are you saying that's a practical effect of what he said? When I said said, I mean not only in argument, but in his brief. I believe that that is what he said. And in this in this. I know. As you see it. The plaintiff's allegation is that the Forest Service has a duty to take protective measures in some way, protect these rivers that are mentioned in this report in the interim until until final designation. Right. Okay. That is that is how that is how we see it. The analysis of a failure to act in this circuit requires consideration of two components. The first is whether there is a clear statutory mandate, and the second is whether there has been a genuine failure to act. Neither is present here. Regarding the first element. Well, you know, if you look at it, but if you look at the duty in that way, it really is almost the same as the Montana Wilderness case, isn't it? No, Judge Tsutsuma, it's not. In Montana Wilderness, the the duty at issue is a duty to maintain wilderness areas. First of all, that required the maintenance of or the attainment of a specified goal. This duty does not require any such action. When you look at the duty to maintain a specified goal, you can look at that at a certain point in time. The duty here, however, is generalized. It's ongoing. You're talking about the duty to consider. So you agree that as to the rivers in this eligibility study, that the service does have a duty to take into mandatory duty to take into consideration those rivers when it's doing its development? The Forest Service, the 57 rivers in Arizona are potential wild and scenic rivers under 5D1 of the Act. Would you say potentially eligible? Potentially. Potentially. Potential under 5D1. So it means they're eligible. No, it does not mean they're eligible. Potential wild and scenic rivers. Well, then I'll ask you what somebody can ask your opponent is what more has to be done in terms of study or evaluation before determination of whether the potential eligibility turns into eligibility. The Forest Service has a process that it has adopted for instituting 5D1 consideration. In this case, it plans and has stated its intention to conduct this evaluation at the time of its next forest plan revision process. Its procedures include eligibility, suitability, eligibility classification, and suitability. I would like to take this time to clarify something that has been stated inaccurately about the interplay of the two sentences of 5D1. There are really two things at issue there. The first, the second sentence, the second sentence does not mandate an eligibility determination. That is not the same thing as an inventory. This sentence has always been interpreted as an information-gathering sentence. The Forest Service takes in information to determine which wild, scenic, and recreational river areas within the United States shall be evaluated in planning reports. With that information, it carries out the first sentence in affording the consideration. The affording of the consideration is the three elements under its procedures that it has adopted. Now, these reports are information that the Forest Service now has. They will be very beneficial to the Forest Service when it conducts its planning process at the next forest plan revision. However, and getting back to the question before the Court, the eligibility determination is not statutorily required. This is a provision of the handbook. This is how the Forest Service has adopted and decided to implement this provision. But it is not a clearly statutory mandated duty. I want to be clear on what your argument is. So you're saying that the 57 rivers do fall within 1276. They are potential wild and scenic rivers. That's a very broad ---- So all of the following provisions apply to the 57 rivers, right? Which following provisions? Well, within section 1276. And if they are a potential addition to national wild and scenic river system, doesn't section 1276 govern how they are treated? 1276 requires that the Forest Service consider potential wild and scenic rivers. Well ---- It does not specify that the consideration be given in any specific way, in any form, in any specific ---- But I'm not going there yet. I just want to be clear that the 57 rivers do come within the statutory section 1276. But you're not arguing that 1276 doesn't govern them at all? No. Okay. So then we get to the D1. Correct. And so let's see. The center argues that because it comes within the section, in every single thing you're doing that bears or could affect those 57 rivers right now, that you have to take them into consideration. I know, I'm just saying that's the crux of the argument. Correct. And the consideration that's to be given is as your manuals discuss consideration. And what you're saying is, yes, we have to comply with this section, and we are going to comply with it. We're going to comply with it in our next overall plan, not with respect to any site-specific project that's going on right now. It could be future sites. Future sites as well, yes. Okay. So I guess what I'm trying to say, given these two, what would be the basis within 1276 for saying after you've designated or determined you have this report that these rivers are eligible, come within this section, for not currently, as you're doing current projects, taking or giving consideration, giving the mandatory consideration that's required in D1? First of all, the reports that were prepared at the request of Congress are not eligible determinations as the Forest Service conducts them. They conduct them at a certain time. It's reasonable for the Forest Service to conduct these reports in the course of its planning process and to do them in a specific way. For an example, these reports, they are very thorough, and they will be a very good source of information, but they're not done when the Forest Service typically does them, and they do not take into account all of the aspects that the Forest Service takes into account. One example of that is the regional or national consideration. For example, if we were talking about a potential recreational wild and scenic river, one thing that the Forest Service would consider is whether on a regional scale people would come from far away to use this river recreationally. The primary way that rivers are protected under the Wild and Scenic Rivers Act is through congressional designation. That's number one. Through that process, Congress often asks agencies to prepare reports, and that is what the Forest Service prepared in 1993. Those were for Congress, for a completely different section of the Act, and I must stress the principal way that rivers are designated under that statute. Beyond that, there's really, under the Act, there are two ways that rivers are designated, and there are two ways that rivers are studied. Rivers are designated by an act of Congress, either by legislation or at the request of an application of a governor of a state to the Secretary of the Interior. Rivers are also studied in two ways under Section 5 of the Act. Section 5A is where Congress requests, or doesn't request, states that certain rivers will be studied. Under 5A, Congress has provided specific protections for such river areas that are being studied. 7B, 8B, and 9B of the Act kick in once Congress designates a river for study. 5D is the second way that rivers are studied. The Forest Service studies rivers in fulfillment of its duty to consider potential scenic rivers. That is how it implements its duty. In the course of that, it provides protection under its handbook, but it is not obligated to do so under the statute. It's the statute does not require that. And, in fact, Congress knew how to require protections for study rivers and did so in Section 5A. It did not do so in Section 5D. Kennedy. Well, when Congress designates a river for study, then it also usually puts a timeframe on it, doesn't it? Yes. Is there any timeframe in any of these 57 rivers yet? Is there a timeframe by statute? Has Congress put any time limit on it? No. Or has the forest or does the forest plan contemplate any time within which they will complete some preliminary revision of the forest plan or anything like that? Right. Congress has never set a deadline for these rivers. The history of these rivers is that they were thinking about proposing legislation and they never introduced the bill. The Forest Service does plan to conduct a complete three-step Wild and Scenic River Act review for these 57 rivers at the time of its next forest plan revision. The plan dates for that differ according to the river. The start dates vary from 2004 through 2009. Let me see if I understand your position. Apparently you agree that 1276 D1 applies to these potential river areas, right? But apparently your case is that there is no unreasonably withheld action because, first of all, I guess the statute doesn't set a specific time when this has to be done and the action is not being unreasonably withheld because you have these plans to address these issues on an ongoing basis as you address these different plans. Is that the gist of your argument? Absolutely. The duty set forth in 5D1 is an ongoing obligation that the Forest Service complies with on an ongoing basis. That it has not evaluated these rivers under its procedures as of now is not the basis to find that it has failed to act. It continues to do the Forest Service has had these procedures in place. It has applied them. It continues to apply them. And this is how it fulfills its duty under 5D1. There is no statutory direction requiring the Forest Service to take any more specific action in this instance or to do anything by a specific time or in a specific way, and that is the crux of this case. If I could, I would like to turn to ripeness. These claims are furthermore not ripe, which is the second jurisdictional defect in this case. Under Ohio Forestry, ripeness requires the consideration of three factors. The first one here is whether delayed review would cause hardship to the plaintiffs. Here it would not. What the center seeks is an injunction preventing the Forest Service from approving any new projects until unspecified protective measures are implemented. It would cause no hardship to delay review until the site-specific decision is made  As it stands now, the possibility of an injury from a future project is completely hypothetical. The second factor is whether judicial intervention would inappropriately interfere with further administrative action, and in this case it clearly would. The Forest Service has a plan to conduct a systematic review. Furthermore, in this case, under the second sentence of 5D, it has significant information upon which to act in the consideration of these rivers. At this time, it is proper for the court to let the Forest Service conduct its review in due course. Finally, the third factor is whether further factual development would be beneficial. Here the center appears to contend that the factual insufficiency is due to a dismissal under 12b-1, but in point of fact, the factual insufficiency is due to the fact that the center has brought this action in the absence of any specific proposal or project that would provide the requisite background and focus for court. At this point in time, the issue that is before the court is no more than an abstract disagreement over administrative policy. And the Forest Service also contends, I'm sorry, not the center, also contends in its reply brief that Ohio Forestry does not apply to this case because it is a procedural challenge. That is an incorrect statement. This is not a challenge, as in NEPA, to the adequacy of the document or consideration that the Forest Service has provided, in point of fact that this is a substantive challenge asking for protective measures to be implemented when they have not been and are not required to be implemented. And the cases cited by the center for this proposition are also in opposite. Are there any further questions for the court? Did the district court judge rule on ripeness? I was trying to take a look at that. I don't think there is. And if he didn't rule on ripeness, was it before him? And if it wasn't before him, can we consider it? I believe it was beforehand, Your Honor. It's in a footnote. Alternatively, the court could base dismissal upon plaintiff's lack of statutory standing or on ripeness grounds. So I believe he did consider it. It says he could. He could. He didn't rule on it. If he didn't rule on it, is it properly before us? It's an alternative basis upon which the district court's judgment can be affirmed in this case. We've conducted all this argument on the theory that the Forest Service is the acting agency, but BLM is involved also. Correct. Was there any effort made to distinguish the responsibilities of the two agencies in this study or this exhibit that designated these various rivers? Some of the rivers flow through Forest Service land. Correct. I don't know of any of them. I don't recall whether they flow through designated wilderness or wilderness-to-wilderness areas. But some flow through BLM land. Some flow through 75 years have been flowing through tailored grazing land before it was BLM. I don't know if the damage was done then. And that's a good point. The guidelines that have been adopted are joint guidelines. So the Forest Service and BLM conduct the consideration process similarly. Yes, they work together. They apply the same. They do it in the same way. And it's also relevant that the entire burden of this does not fall on the Forest Service. But, no, these were Forest Service. The 93 reports were Forest Service reports. They were just prepared by the Forest Service, not in conjunction with BLM. All right, Ms. Catales. Thank you very much. Thank you. Rebuttal. Your Honors, I'd just like to say with my remaining time that the question here in presenting the 12b1 motion to dismiss is not whether plaintiffs will actually prevail on our claims, but whether we will be given an opportunity to actually present evidence. In this particular case, the district court denied our request to even amend the complaint. Well, didn't he tell you, though, that you could bring site-specific claims anytime? There's no preclusion of filing challenges against a grazing permit or a road-building project or any project that would have environmental consequences. That's correct, Your Honor. He did say that in a footnote towards the end. We were actually confused by that footnote, given that he had held that there was no statutory duty to consider these rivers. If he felt like more specificity was required, we were hoping he would allow us to amend the complaint. Didn't he ask you to tell him what statute requires what action? No, actually, he didn't technically rule on the 5D1 duty to consider issue. He framed it as a failure to do, a duty to do a systematic 5D1 review. And there's been some confusion among litigants in this case as to exactly what that means. I do know that the ---- How can you amend if you were given leave? What further could you allege? We wanted to amend the complaint if there were concerns over rightness or specificity. If the court felt like the judge wanted more of a tangible, factual scenario, that we could include that evidence in the complaint. The problem with this case is a similar problem that the litigants face in the Montana Wilderness Act case, which is that a lot of the decisions we're challenging are not necessarily decisions that mark the consummation of the decision process that you could sue, say, under Section 2A. So this is more of a failure to act case. We felt that if there was ---- I mean, granted, the complaint is drawn in very broad terms, but we do have evidence we would like to present. And as an administrative record, we would like to review and conduct discovery in this case. But because the case was dismissed for lack of subject matter jurisdiction in the context of a 12D1 motion, we were never given a chance to proceed. Well, you just said the district court said there was no duty under 5D1, but the Forest Service Council just said there was a duty under 5D1. And it's just not the duty that you're claiming that it is. And they plan to proceed in accordance with that in their next forest plan revision. So there is a duty. There is a duty. So I suppose the district court erred to that extent. Yeah, they actually did recognize a duty in the first sentence of 5D1, which is what this case is really all about from our perspective. The Forest Service plans, they must consider these while planning. They concede they plan at two levels, forest plan level. They didn't do the eligibility back when they made the forest plans, and they haven't done it since then when they've planned at the site-specific level, which is our concern now. We feel like they're planning now, the harm is occurring now, yet these rivers are given no consideration at all. Is your complaint sufficient to challenge site-specific actions when you allege them by illustration? Have you really challenged them? We believe we meet the requirements under Federal Rules of Procedure 8 for pleadings. We believe that we do specify that for each of these 57 rivers, that they are authorizing activities in these rivers. We don't necessarily name specific projects. And given that concern that we did have over that, we did request leave to amend, but that was denied. So it looks like I'm out of time. Okay. Thank you. Thank you. Thank you, Mr. Bishop. Thank you, Ms. Katyalas. This case is submitted for decision.
judges: Goodwin, Tashima, Wardlaw